Thomas W. Barth, SBN 154075
Kresta Nora Daly, SBN 199689
**BARTH DALY LLP**
PO Box F
Winters, CA 95694
Telephone: (916) 440-8600
Facsimile: (916) 440-9610
Email: kdaly@barth-daly.com

Attorneys for Plaintiffs CHRISTINE DeMARIA
individually and in her capacity as
Guardian Ad Litem for ANTHONY DeMARIA

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE DeMARIA, and CHRISTINE DeMARIA, pursuant to application for appointment as Guardian Ad Litem for ANTHONY DeMARIA, <br><br> Plaintiffs, <br><br> v. <br><br> YOLO COUNTY SHERIFF'S OFFICE, TOM LOPEZ, GARY HALLENBECK, MICHAEL GLASER, ROBERT MIDDLEMAN, MATTHEW WIRICK, SAMUEL MACHADO, NEAL GOODRICH, GARY RICHTER, TONYA TOLENTINO, HERNAN VEGA, and DOES 1 through 15, inclusive, in their official and personal/individual capacities. <br><br> Defendants. | Case No. 2:23-CV- <br><br> **COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Christine DeMaria and Anthony DeMaria, by and through his guardian ad litem,

subject to motion for appointment of Christine DeMaria as guardian ad litem, upon information

and belief, allege the following:

## **INTRODUCTION**

1.     This civil rights action seeks compensatory and punitive damages from defendants

for unlawfully obtaining a search warrant, entering the DeMaria home, located on a rural road in

///

BARTH DALY LLP
ATTORNEYS AT LAW

Guinda, County of Yolo, State of California, unlawfully taking a number of weapons and a large quantity of ammunition, and unlawfully detaining Anthony DeMaria.

2.    On or about April 5, 2023, Yolo County Sheriff's Detective Robert Middleman obtained a search warrant from a Yolo County judge.  In that search warrant Middleman made intentional, material misrepresentations to the judge in order to obtain the search warrant.  The following day, Yolo County Sheriff's deputies unlawfully searched the DeMaria home, unlawfully seized a weapons and ammunition collection valued in excess of $150,000 and detained Anthony DeMaria.  Mr. DeMaria suffered severe physical and mental injuries. Mrs. DeMaria suffered severe anxiety and depression caused by the actions of defendants.

## JURISDICTION AND VENUE

3.    This is an action for money damages brought pursuant to Title 42 of the United States Code, Sections 1983 and 1988; and the Second, Eighth and Fourteenth Amendments of the United States Constitution against Yolo County Sheriff's Office and various employees then working at the Yolo County Sheriff's Office, and for violations of plaintiffs' rights under the Second, Fourth, and Fourteenth Amendments of the United States Constitution.

4.    Jurisdiction is conferred upon this Court by Title 42 of the United States Code, Sections 1331 (federal question) and 1343 (civil rights).

5.    Venue lies in the Eastern District of California pursuant to Title 28, United States Code Section 1367, as the unlawful acts and practices alleged herein occurred in and around the census designated place Guinda, County of Yolo, California, which is within this judicial district.

## PARTIES

6.    Plaintiff Christine DeMaria is 76-years old and one of the owners and residents of a rural property located in Guinda, California.  Christine DeMaria is, and was at all times mentioned herein, an individual and citizen of the United States of America, resident of Yolo County.

7.    Christine DeMaria is and has been married to Anthony "Tony" DeMaria for approximately 56 years.  Anthony DeMaria is a 78-year-old man suffering from dementia. Christine DeMaria seeks appointment by the Court to bring this action in her capacity as guardian

BARTH DALY LLP
ATTORNEYS AT LAW

COMPLAINT                                                                      2:23-CV-_____

1   ad litem for her husband Tony DeMaria.  As a result of his dementia, Tony DeMaria is forgetful

2   and easily becomes very anxious.

3       8.      At all relevant times and specifically in and around April 2023, defendant Michael

4   Glaser was a retired or semi-retired on-call employee of the Yolo County Sheriff's Office

5   [hereinafter YCSO].  Defendant Glaser was acting under color of state law when he knowingly

6   gave false information to another Sheriff's Deputy in order to obtain a search warrant for the

7   DeMaria residence, unlawfully searched the DeMaria residence, seized a valuable gun and

8   ammunition collection, detained and injured Tony DeMaria, and injured Christine DeMaria.

9   Defendant Glaser is sued in his individual/personal capacity for his own culpable actions.

10      9.      At all relevant times and specifically in and around April 2023, defendant Robert

11  Middleman was an employee of YCSO.  Defendant Middleman was acting under color of state

12  law when he knowingly gave false information to a judge in order to obtain a search warrant for

13  the DeMaria residence, unlawfully searched the DeMaria residence, seized a valuable gun and

14  ammunition collection, detained and injured Tony DeMaria, and injured Christine DeMaria.

15  Defendant Middleman is sued in his individual/personal capacity for his own culpable actions.

16      10.     At all relevant times and specifically in and around April 2023, defendant Gary

17  Hallenbeck was an employee of YCSO with the rank of Captain.  Defendant Hallenbeck was

18  acting under color of state law when he unlawfully searched the DeMaria residence, seized a

19  valuable gun and ammunition collection, detained and injured Tony DeMaria, and injured

20  Christine DeMaria.  Defendant Hallenbeck is sued in his individual/personal capacity for his own

21  culpable actions.

22      11.     At all relevant times and specifically in and around April 2023, defendant Matthew

23  Wirick was an employee of YCSO.  Defendant Wirick was acting under color of state law when

24  he unlawfully searched the DeMaria residence, seized a valuable gun and ammunition collection,

25  detained and injured Tony DeMaria, and injured Christine DeMaria.  Defendant Wirick is sued in

26  his individual/personal capacity for his own culpable actions.

27      12.     At all relevant times and specifically in and around April 2023, defendant Samuel

28  Machado was an employee of YCSO.  Defendant Machado was acting under color of state law

BARTH DALY LLP
ATTORNEYS AT LAW

when he unlawfully searched the DeMaria residence, seized a valuable gun and ammunition collection, detained and injured Tony DeMaria, and injured Christine DeMaria. Defendant Machado is sued in his individual/personal capacity for his own culpable actions.

13. At all relevant times and specifically in and around April 2023, defendant Neal Goodrich was an employee of YCSO. Defendant Goodrich was acting under color of state law when he unlawfully searched the DeMaria residence, seized a valuable gun and ammunition collection, detained and injured Tony DeMaria, and injured Christine DeMaria. Defendant Goodrich is sued in his individual/personal capacity for his own culpable actions.

14. At all relevant times and specifically in and around April 2023, defendant Gary Richter was an employee of YCSO. Defendant Richter was acting under color of state law when he unlawfully searched the DeMaria residence, seized a valuable gun and ammunition collection, detained and injured Tony DeMaria, and injured Christine DeMaria. Defendant Richter is sued in his individual/personal capacity for his own culpable actions.

15. At all relevant times and specifically in and around April 2023, defendant Tonya Tolentino was an employee of YCSO. Defendant Tolentino was acting under color of state law when she unlawfully searched the DeMaria residence, seized a valuable gun and ammunition collection, detained and injured Tony DeMaria, and injured Christine DeMaria. Defendant Tolentino is sued in her individual/personal capacity for her own culpable actions.

16. At all relevant times and specifically in and around April 2023, defendant Hernan Vega was an employee of YCSO. Defendant Vega was acting under color of state law when he unlawfully searched the DeMaria residence, seized a valuable gun and ammunition collection, detained and injured Tony DeMaria, and injured Christine DeMaria. Defendant Vega is sued in his individual/personal capacity for his own culpable actions.

17. At all relevant times and specifically in and around April 2023 Defendant Tom Lopez was the elected Yolo County Sheriff and an employee of YCSO. Defendant Lopez was acting under color of state law when he (a) affirmed, countenanced, or otherwise sanctioned an unwritten official policy by the YCSO to unlawfully seize weapons of people he and/or his deputies deemed unworthy to possess, and (b) adopted, approved, sanctioned, implemented, and

BARTH DALY LLP
ATTORNEYS AT LAW

allowed an official policy or custom of the Yolo County Sheriff's Office not to investigate and discipline employees of the Sheriff's Office in the face of widespread constitutional violations similar to the violations alleged in this case.  Defendant Lopez is sued in his individual/personal capacity for his own culpable actions and in his official capacity as the elected Yolo County Sheriff.

18.     At all relevant times and specifically in and around April 2023, defendant Yolo County Sheriff's Office was a subdivision of Yolo County, a political subdivision of the State of California.  Defendant Yolo County Sheriff's Office adopted, approved, sanctioned and implemented a widespread, well-settled custom or practice of violating the constitutional and civil rights of the citizens of Yolo County by seizing and depriving from such citizens their weapons without probable cause or suspicion of a crime or any other legal justification.  Employees of YCSO acted pursuant to the official policy, custom or practice of seizing weapons from private property without legal justification when they committed the acts alleged herein against plaintiffs, thereby violating plaintiffs' rights to bear arms under the Second Amendment of the United States Constitution.

19.     The true names of Does 1 through 15, inclusive, are unknown to plaintiffs at this time.  Defendants are current and former employees of YCSO.  Defendants were acting under color of state law when they unlawfully obtained a search warrant, searched the DeMaria property, unlawfully seized weapons and other items, and unlawfully detained and injured Tony DeMaria.  Doe Defendants are currently being sued in their individual capacities.  Plaintiffs believe the identities of defendants will be revealed through discovery and will permit plaintiffs to amend this Complaint to state the same.

20.     Plaintiffs are informed and believe, and thereon allege that each defendant is, and at all times mentioned was, the agent, employee, representative successor and/or assignee of each other defendant.  Each defendant, in doing the acts, or in omitting to act as alleged in this complaint, was acting within the scope of his or her actual and apparent authority or the alleged acts and omissions of each defendant as agent were subsequently adopted and ratified by each other defendant as principal.  Plaintiffs are informed and believe that each of the individual

BARTH DALY LLP
ATTORNEYS AT LAW

COMPLAINT                                                                      2:23-CV-_____

defendants was in some way responsible for the constitutional violations and torts alleged in this complaint.

21.     In committing the acts alleged in this complaint, defendants acted knowingly, maliciously, and with reckless or callous disregard for the constitutional rights of Christine and Tony DeMaria, justifying an award of punitive damages under federal law against each defendant.  On May 31, 2023, YCSO received a written claim for damages submitted by counsel on behalf of plaintiffs.  On July 28, 2023, the Clerk of the Yolo County Board of Supervisors received a written claim for damages submitted by counsel on behalf of plaintiffs.  Plaintiffs have not received any response from YCSO or Yolo County concerning the written claims for damages.  Plaintiffs are informed and believe, and thereon allege, that YCSO and Yolo County will deny the written claims for damages, and plaintiffs are therefore proceeding with filing this action prior to any such response or expiration of the time for any such response.

## **FACTS**

### **Background**

22.     Christine and Tony DeMaria live in a remote area on approximately 830 acres. The property is located down a dirt road near the census designated area of Guinda.  Guinda is in a part of Yolo County referred to as the Capay Valley.

23.     Tony DeMaria is a retired attorney.  He retired some 20 years ago due to serious back problems which rendered him incapable of working.  Mr. DeMaria suffers from severe lumbar spinal stenosis.  Tony DeMaria suffers from mild to moderate cognitive impairment (dementia) and has so suffered for an unknown period of time.  As part of his dementia he can become verbally aggressive, a fact previously known to the YCSO.  The search warrant application authored by defendant Middleman, dated April 5, 2023, indicates he was aware of prior reports that Tony DeMaria has dementia.  In that same document, Middleman opines that Tony DeMaria "is possibly suffering from a mental health decline."

24.     On prior occasions, members of the YCSO, including but not limited to defendant Glaser threatened to take Anthony DeMaria's guns.  Tony DeMaria purchased his gun collection over a period of 25 years.  He collected old Colt revolvers because they are rare and iconic.  He

BARTH DALY LLP
ATTORNEYS AT LAW

COMPLAINT                                                                    2:23-CV-_____

collected Henry single-shot lever-action rifles, Winchesters, and old western guns because they are commemorative of the Old West history.  He collected several target pistols because he formerly trained for target shooting with a neighbor who is one of only several highly awarded target marksmen in the entire country.  And he collected several shotguns for his grandchildren. Virtually all of Tony DeMaria's guns were collected for sentimental and historic reasons.

25.     James Mount is a deputy with the Yolo County Sheriff's Office.  He has been so employed for approximately 15 years.  His assignment in April 2023 was as the resident deputy in the Capay Valley.  Deputy Mount knows the DeMarias well as he has developed a relationship with them for approximately 10 years.  Mount was aware of Tony DeMaria's gun collection and ammunition and knew the combinations to his gun safes.  On previous occasions when Anthony DeMaria became worried he called Deputy Mount on Mount's cell phone.

26.     California Penal Code Section 422 makes it illegal to threaten another person.  The elements of a violation of Penal Code Section 422 are defined by California Criminal Code Section 1300 which, in pertinent part, reads:

> 1.     The defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to [insert name of complaining witness or member[s] of complaining witness's immediate family];
>
> 2.     The defendant made the threat (orally/in writing/by electronic communication device);
>
> 3.     The defendant intended that (his/her) statement be understood as a threat [and intended that it be communicated to [insert name of complaining witness];
>
> 4.     Under the circumstances, the threat was so clear, immediate, unconditional, and specific that it communicated to [insert name of complaining witness] a serious intention and the immediate prospect that the threat would be carried out;
>
> 5.     The threat actually caused [insert name of complaining witness] to be in sustained fear for (his/her) own safety [or for the safety of (his/her) immediate family]; and
>
> 6.     [Insert name of complaining witness] fear was reasonable under the circumstances.

///

///

27.     Under the Fourth Amendment, a person has the right to be free from an unreasonable search of their residence.  In general, a search of a residence is unreasonable under the Fourth Amendment if the search is not conducted pursuant to a search warrant.  A search warrant is a written order signed by a judge that permits a law enforcement officer to search a particular location and seize specific items.  To obtain a search warrant, a law enforcement officer must show probable cause that a crime has been committed and that items related to that crime are likely to be found in the place specified in the warrant.  In deciding whether to issue a search warrant, a judge generally relies on the facts stated in a warrant affidavit signed by a law enforcement officer.

**April 4, 2023**

28.     At some point in the evening of April 4, 2023, Tony DeMaria became concerned because he could not find his wife Christine.  In fact, Tony DeMaria had forgotten Christine DeMaria had gone to town.  Tony DeMaria erroneously believed Christine DeMaria had gone somewhere with Deputy Mount.  Tony DeMaria made several calls to Deputy Mount's phone. When Deputy Mount did not answer Tony DeMaria called 911.

29.     A recording of the 911 call reveals the following conversation:

| | |
|---|---|
| 911 Dispatch: | 9-1-1. What's the address of the emergency? |
| Tony: | I'd like to speak to James Mount he's a deputy.  I am looking for him. He has walked off with my wife.  And I'm looking for him. |
| 911 Dispatch: | Okay.  I can take [inaudible] in touch with him.  What's your name sir? |
| Tony: | DeMaria.  And they better find him damn fast. |
| 911 Dispatch: | What's your first name sir? |
| Tony: | Anthony. |
| 911 Dispatch: | Alright.  And what's your address? |
| Tony: | My address? |
| 911 Dispatch: | Yes. |

{00040851}

COMPLAINT                                                                2:23-CV-_____

| | | |
|---|---|---|
| 1 | Tony: | Christ, I live in the country.  I don't know what the address is. |
| 2 | | |
| 3 | 911 Dispatch: | What's your location sir? |
| | Tony: | My what? |
| 4 | | |
| 5 | 911 Dispatch: | Your location. |
| | Tony: | We live up in Guinda. |
| 6 | | |
| 7 | 911 Dispatch: | Okay and you don't know your address? |
| | Tony: | No, I don't.  I'm 80 years old and I don't worry about these things. |
| 8 | | |
| 9 | 911 Dispatch: | What's your wife's name? |
| 10 | Tony: | Christine.  And they're both in deep shit.  I'm a lawyer.  Retired and all hell is gonna break loose when they get found.  Believe me.  It's gonna cost you money. |
| 11 | | |
| 12 | | |
| 13 | 911 Dispatch: | Okay.  Well I can direct you to the right place but I'm just not exactly sure what's going on.  When you say he walked off with her.  What are you referring to? |
| 14 | | |
| 15 | Tony: | They disappeared together. |
| 16 | 911 Dispatch: | Okay.  What's your wife's first name again? |
| 17 | Tony: | Jesus.  Her last name or her first? |
| 18 | 911 Dispatch: | How about both? |
| 19 | Tony: | Try it again.  DeMaria is her last name.  Christine is her first.  I hope I don't have to repeat it again.  I'm not in a real good mood. |
| 20 | | |
| 21 | 911 Dispatch: | Spell DeMaria for me so I have it right. |
| 22 | Tony: | I beg your pardon. |
| 23 | 911 Dispatch: | Spell the last name for me so I have it… |
| 24 | Tony: | d-e-m-a-r-i-a |
| 25 | 911 Dispatch: | Alright.  So they have a history of doing this? |
| 26 | | |
| 27 | /// | |
| 28 | /// | |

BARTH DALY LLP
ATTORNEYS AT LAW

{00040851}

- 9 -

COMPLAINT                                                                        2:23-CV-_____

| | | |
|---|---|---|
| 1 | Tony: | No. And god damn it, it's enough of this. Go look for Mount. You can get him on the radio for Christ's sakes. I know him. Call him on the radio and tell him DeMaria is after his ass. |
| 2 | | |
| 3 | | |
| 4 | 911 Dispatch: | What's the best number to reach you at sir? |
| 5 | Tony: | Can you do that? |
| 6 | 911 Dispatch: | Well, he is not on duty tonight so I'm gonna have to… |
| 7 | | |
| 8 | Tony: | I don't give a shit. Call him on his home phone. |
| 9 | 911 Dispatch: | What's a good phone number to reach you at? |
| 10 | Tony: | [Telephone number redacted]. And if I don't get a call back from you in 10 minutes there's gonna be more trouble than your police department has ever seen in its history. You get that son a bitch on the phone and have him call me now. Now. |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | 911 Dispatch: | I'll have a sergeant reach out to you. |
| | Tony: | I beg your pardon. |
| 15 | 911 Dispatch: | I'll have a sergeant reach out to you. |
| 16 | Tony: | I don't want no fucking sergeant to talk to me. Call him. |
| 17 | | |
| 18 | 911 Dispatch: | Okay sir. |
| 19 | Tony: | I will wait while you call him. |
| 20 | 911 Dispatch: | I'm gonna have somebody reach out to you. I'm gonna disconnect with you now… |
| 21 | | |
| 22 | Tony: | Disconnecting me? I'm gonna come after you guys with everything I can think of. |
| 23 | 911 Dispatch: | Okay. I'm placing you on hold. |

24        30.        According to a search warrant affidavit, Tony DeMaria called Deputy Michael

25   Glaser. The search warrant states:

26              "Deputy Glaser knows Anthony personally and has dealt with him
             numerous times throughout his career at the Sheriff's Office.
27             Anthony informed Deputy Glaser that Deputy Mount took his wife
             Christine away and demanded Deputy Mount return her or there
28             would be consequences to pay. Anthony stated there would be one

BARTH DALY LLP
ATTORNEYS AT LAW

less deputy working for the Sheriff's Department and that he will
sue. Anthony was agitated and very aggressive."

31.     Later in the evening of April 4, 2023, after the 911 call was made, Deputy Mount became aware of the call. Deputy Mount went to the DeMaria residence. When Mount arrived Tony DeMaria was asleep. Deputy Mount spoke with Tony DeMaria for a while and departed the residence without incident. Deputy Mount's contact with Tony DeMaria on April 4, 2023, is memorialized in YCSO Report No. 23-730. Among the information documented in that report is the fact that James Mount stated he was not afraid of Tony DeMaria.

**April 6, 2023**

32.     Despite the fact Deputy Mount documented his lack of fear of Tony DeMaria the Yolo County Sheriff's Department, without Mount's knowledge, sought a search warrant for the DeMaria residence. The stated purpose of the warrant was to obtain items to prove they were "possessed by a person with the intent to use it as a means to commit a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery" and "tends to show that a felony has been committed or that a particular person has committed a felony." A redacted version of the search warrant is attached hereto as **Exhibit A** and incorporated herein.[1] The warrant was signed and executed on April 6, 2023.

33.     The search warrant lacks probable cause. The warrant recounts the two aforementioned phone calls made by Tony DeMaria on April 4, 2023. The warrant fails to indicate that James Mount, the "victim," stated in his report that he was not afraid of Tony DeMaria. The warrant also fails to mention that Mount went to the DeMaria residence the night of April 4, 2023, and spent time with Anthony DeMaria.

34.     Additionally, the warrant fails to address the fact that a violation of Penal Code Section 422 requires the speaker, in this case Tony DeMaria, intended his statement be understood as a threat and intended that it be communicated to James Mount. In fact, Tony DeMaria did not make any threats of bodily harm to James Mount and did not ask anyone to

///

---

[1] The redactions remove personal identifying information.

{00040851}

COMPLAINT                                                                      2:23-CV-_____

1   communicate a threat to James Mount.  The only "threat" Tony DeMaria made was a clear threat

2   to sue the Yolo County Sheriff's Department.

3       35.    Tony DeMaria told dispatch he was looking for Mount and he wanted his wife

4   back.  DeMaria told defendant Glaser he wanted his wife back, there would be one less deputy,

5   and he was going to sue the Sheriff's department.  Tony DeMaria never threatened James Mount

6   or anyone else's physical safety.

7       36.    Penal Code Section 422 also requires a threat to be so clear, immediate,

8   unconditional, and specific that it communicated to James Mount a serious intention and the

9   immediate prospect that the threat would be carried out.  None of the statements made by Tony

10  DeMaria constitute a clear, immediate, unconditional and specific threat to Mount or anyone else.

11  Mount was not scared.  The failure to include this material information in the search warrant

12  affidavit misled the court.

13      37.    The real reason law enforcement sought the search warrant was as a ruse to get

14  Tony DeMaria's guns.  Defendant Glaser previously told Christine DeMaria he wanted Anthony

15  DeMaria's guns out of the DeMaria home.  Glaser has made similar comments on other occasions

16  to other people.  An unrelated party, S.D., a friend of defendant Glaser, was told by defendant

17  Glaser that "as soon as you start getting dementia, I'm taking your guns away."

18      38.    S.D. is also aware of a situation in which a man died from COVID within the past

19  several months.  The family called 911 and upon arriving at the home, the YCSO conducted an

20  extensive search of the premises and removed all guns from the residence.  Within the past

21  several years, YCSO deputies arrived at a personal residence after a report of a death by means of

22  a discharge of a shotgun, and the deputies conducted an extensive search of the home, seizing and

23  removing all weapons found during the search, regardless of whether they might have been a

24  shotgun used in the death, thereafter refusing to return the weapons to their owners.  It is apparent

25  from actions and statements made by employees of YCSO that YCSO has an unwritten or

26  informal official policy, custom or practice to remove all guns from private parties' premises any

27  chance they get to be on the premises for any incident, without legal justification for removal of

28  the guns.

BARTH DALY LLP
ATTORNEYS AT LAW

COMPLAINT                                                    2:23-CV-_____

39.     Defendants YCSO and Tom Lopez are aware of and have sanctioned the unlawful YCSO policy, custom and practice to remove guns from private parties when deputies are allowed access onto private property for any reason, without legal justification for removal of the guns, and defendants YCSO and Lopez have adopted, approved, sanctioned, allowed, and implemented a policy, custom and practice of failing to investigate and discipline employees of YCSO who illegally seize and remove guns from private citizens without probable cause and without any legal justification.

40.     Deputy Mount was never interviewed by any member of the YCSO prior to the application for and execution of the search warrant.  The search warrant was logged under YCSO Report No. 23-730, the same report number in which Deputy Mount documented his lack of fear of Tony DeMaria.

41.     Prior to defendants arriving at the residence, defendant Glaser called Christine DeMaria and told her they wanted to come onto her property with their ATVs to search the hills for illegal marijuana grows.  Christine DeMaria understood law enforcement's concern to be that people were illegally growing marijuana on the DeMaria property without the DeMarias' knowledge or consent.  Christine DeMaria initially allowed YCSO access on the property for their stated intent to search the hills on ATVs, but after their arrival, she told them that she did not agree to their plan to go up into the hills because she considered it too dangerous.  Despite the request by Christine DeMaria that the YCSO deputies cease their activities and leave the property, defendants thereafter began to execute the illegal search warrant.

42.     During the search, Captain Hallenbeck asked Christine DeMaria to meet him on the porch of the house and stated twice to Christine DeMaria that "Your husband threatened to kill one of my deputies, what was I supposed to do?" This statement by Captain Hallenbeck was false.

43.     Despite the fact that James Mount is the resident deputy in the Capay Valley and is well known to have a relationship with the DeMarias he was not told Yolo County deputies were planning to execute a warrant at the DeMaria residence.  Mount became aware of the search after it was largely completed.

44.     Tony DeMaria was greatly distressed by the deputies' presence at his property. The DeMaria residence is at the end of a one-mile private driveway, and there was no apparent reason why defendants would be at his house.  He came out of the house and told Deputies to get off his property.  Deputies hand-cuffed Tony DeMaria and forcibly threw him in the back of a police car, placing him in a caged enclosure.  Thereafter they proceeded to taunt and wave at Tony DeMaria when they went by the car, seeing that he was highly distressed and angered by their taunting.  Tony DeMaria pleaded with the deputies to allow him to exit the patrol car and sit on the nearby lawn, but the deputies refused.  As a result of being thrown in the police car and angered by the taunting by several deputies, Tony DeMaria sustained numerous cuts and bruises, and he suffered severe injury to his back and nerves extending into his lower extremities, severely exacerbating his already existing medical condition of severe lumbar spinal stenosis.  Despite the fact the search warrant was obtained, in part to apprehend Tony DeMaria, he was not placed under arrest.  Instead, he was transported to a local hospital.

45.     Since the day of the search, Tony DeMaria's mental state has significantly declined.  He is deeply paranoid and disoriented.  He cannot focus on any issue other than YCSO's unlawful intrusion into his home and the seizure of his weapons. Tony DeMaria's severe physical injuries arising from the excessive force exerted on him during his confinement in the Sheriff's patrol car, and his significant cognitive decline was directly caused by defendants Hallenbeck, Glaser, Middleman, Wirick, Machado, Goodrich, Richter, Tolentino, Vega and Does 1 through 15 and the manner in which they chose to detain and subsequently mock Tony DeMaria.

46.     At a minimum, defendants were aware of the fact Tony DeMaria had dementia prior to the execution of the search warrant.  Defendant Glaser previously discussed the issue with plaintiff Christine DeMaria.  Defendant Middleman made reference to Tony DeMaria's mental state in two separate paragraphs in the search warrant application.  Defendants Hallenbeck, Wirick, Machado, Goodrich, Richter, Tolentino, Vega and Does 1 through 15 were briefed on the contents of the search warrant prior to its execution and were therefore, on notice that Tony DeMaria suffered from dementia.

47.     Defendants searched the DeMaria residence and located a substantial gun collection which consisted of no fewer than 34 firearms and approximately 20,000 rounds of ammunition.  Nearly all of those firearms and all the ammunition were located in locked gun safes.  Defendants unlawfully seized all of the weapons and ammunition located in the home and adjacent buildings.  Defendants also took a milk bin located in the kitchen.

48.     Plaintiffs have a history of being close to members of the YCSO.  Plaintiffs have invited several members of the YCSO to hunt on their property, invited YCSO deputies to search for illegal cannabis grows on their property, and thought they had a close relationship with the members of the YCSO.  The actions of defendants have caused plaintiffs to suffer an abiding sense of betrayal because defendants took advantage of their close relationship.

**FIRST CAUSE OF ACTION**

**DEPRIVATION OF PLAINTIFFS' RIGHTS UNDER
UNITED STATES CONSTITUTION, AMENDMENTS II AND XIV
(AGAINST ALL DEFENDANTS)**

49.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

50.     The Second Amendment's guarantee of "the right of the people to keep and bear arms" secures to law-abiding, responsible, adult citizens the fundamental constitutional right to bear arms outside the home. U.S. Const. Amend. II.  This Second Amendment right to bear arms applies against the State of California under United States Constitution, Amendment XIV.

51.     The Second Amendment right to keep and bear arms cannot be subject to a government official's discretionary determination of whether a law-abiding citizen should be allowed to exercise that right.

52.     All defendants participated in conduct, including seeking and obtaining a search warrant in order to take Anthony DeMaria's guns and ammunition without probable cause, and taking Anthony DeMaria's guns and ammunition without probable cause.  A government action that limits the right to keep arms for the purpose of self-defense to those few, favored citizens whom YCSO and defendants arbitrarily deem "sufficiently responsible" to keep arms effectively operates as a ban on the possessing of firearms by law-abiding citizens who must meet some unknowable standard in order to keep their lawfully possessed arms.

BARTH DALY LLP
ATTORNEYS AT LAW

53.     By infringing upon Anthony DeMaria's Second Amendment right to keep arms the actions by defendants, as discussed in the foregoing allegations violate the Second Amendment, which applies to defendants by operation of the Fourteenth Amendment, both facially and as applied to plaintiff Anthony DeMaria appearing by and through Christine DeMaria in her capacity as guardian ad litem of Anthony DeMaria.

WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

**VIOLATION OF PLAINTIFFS' RIGHT TO BE FREE
OF UNREASONABLE SEARCHES AND SEIZURES
UNDER UNITED STATES CONSTITUTION, AMENDMENT IV
(42 USC § 1983 AGAINST ALL DEFENDANTS)**

54.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

55.     Defendants deprived plaintiffs Christine DeMaria, individually and in her capacity as guardian ad litem of Anthony DeMaria, of their rights under the Fourth Amendment to the Constitution, applicable to the State of California by the XIV Amendment, when defendants intentionally and/or in reckless disregard of the truth made material misrepresentations and/or omissions in a search warrant affidavit submitted to a Yolo County Superior Court Judge.

56.     Defendant Middleman submitted to a judge a warrant affidavit that contained one or more misrepresentations or omissions material to the finding of probable cause.  Specifically, the search warrant stated Anthony DeMaria threatened to kill James Mount in violation of California Penal Code Section 422.  No such threat ever occurred.  Defendants knew or should have known James Mount documented in his report about his contact with Anthony DeMaria on April 4, 2023, that Mount was not afraid of Anthony DeMaria.  Defendant Middleman intentionally omitted this information from the search warrant application knowing the elements of a violation of Penal Code Section 422 required James Mount to be in fear of Anthony DeMaria.  Defendant Middleman listed Anthony DeMaria's lawfully possessed guns as being possessed with the intent to commit a crime or evidence that a crime was committed and that Anthony DeMaria committed that crime.  When he made that statement defendant Middleman knew neither statement was true.  Rather Middleman, and other defendants, knew Anthony

BARTH DALY LLP
ATTORNEYS AT LAW

BARTH DALY LLP
ATTORNEYS AT LAW

1   DeMaria was a gun collector who possessed his weapons with a lawful intent.  Additionally,

2   defendant Middleman and the other officers knew or should have known, lawful possession of a

3   weapon does not tend to prove or disprove the elements of a violation of Penal Code Section 422.

4          57.     Defendant Middleman made those misrepresentations and/or omissions either

5   intentionally or with reckless disregard for the truth, and defendants' actions were judicial

6   deception, because but for the dishonesty in obtaining the search warrant, the search and seizure

7   of guns and ammunition would not have occurred.  The remaining defendants were complicit

8   with defendant Middleman in that they had access to James Mount's reports, knew or should have

9   known the truth, and did not correct the erroneous information in the search warrant application.

10  Defendant Middleman did this because he knew a judge would not issue a search warrant when

11  no crime was either threatened or occurred.  All defendants acted or purported to act, as alleged

12  herein, in the performance of their official duties.

13         58.     Defendants' conduct violated the rights of Christine DeMaria and Anthony

14  DeMaria, appearing hereby and through his guardian ad litem Christine DeMaria, to be free from

15  unreasonable searches and seizures of their person and private property.

16         59.     Defendants' conduct was a substantial factor in causing harm to Christine DeMaria

17  and Anthony DeMaria.

18         WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

19                              **THIRD CAUSE OF ACTION**

20                                 **EXCESSIVE FORCE**
    **(42 USC § 1983 AGAINST DEFENDANTS HALLENBECK, GLASER, MIDDLEMAN,**
21  **WIRICK, MACHADO, GOODRICH, RICHTER, TOLENTINO, VEGA AND DOES 1-15)**

22         60.     Plaintiffs reallege and incorporate herein by reference each and every allegation

23  contained in the preceding paragraphs of this Complaint.

24         61.     Acting or purporting to act in their official capacities, defendants forcefully

25  detained and subsequently taunted Tony DeMaria, resulting in Tony DeMaria's significant

26  physical injury and mental decline.  Such conduct lacked justification.  Defendants Hallenbeck,

27  Glaser, Middleman, Wirick, Machado, Goodrich, Richter, Tolentino, Vega and Does 1-15's

28  ///

1   conduct constituted excessive force against Tony DeMaria in violation of his Eighth Amendment

2   rights.

3       62.     As a direct and proximate result of defendants Hallenbeck, Glaser, Middleman,

4   Wirick, Machado, Goodrich, Richter, Tolentino, Vega and Does 1-15's conduct Tony DeMaria

5   experienced pain, suffering, mental and emotional trauma, severe physical injuries to his back and

6   lower legs, and a serious decline in his mental state.  Defendants Hallenbeck, Glaser, Middleman,

7   Wirick, Machado, Goodrich, Richter, Tolentino, Vega and Does 1-15 caused Tony DeMaria's

8   severe physical injuries and significant mental decline, depriving plaintiff Christine DeMaria of

9   her husband's love and affection.

10      63.     Plaintiffs allege the acts of defendants Hallenbeck, Glaser, Middleman, Wirick,

11  Machado, Goodrich, Richter, Tolentino, Vega and Does 1-15 were willful, malicious, intentional,

12  oppressive, and reckless and/or were done with willful and conscious disregard of plaintiff's

13  rights, welfare and safety, thereby justifying the award of punitive and exemplary damages in an

14  amount to be determined at trial.

15      64.     As a direct and legal result of defendants Hallenbeck, Glaser, Middleman, Wirick,

16  Machado, Goodrich, Richter, Tolentino, Vega and Does 1-15's acts and omissions, plaintiffs

17  suffered damages, including, and without limitation, pain and suffering, extreme mental and

18  emotional distress, severe physical injuries, attorneys' fees and cost of suit, and other pecuniary

19  losses not yet ascertained.

20      WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

21                          **FOURTH CAUSE OF ACTION**

22          **POLICIES, PRACTICES AND/OR CUSTOMS VIOLATING THE SECOND
            AMENDMENT OF THE UNITED STATES CONSTITUTION**
23              **(42 USC § 1983 AGAINST ALL DEFENDANTS)**

24      65.     Plaintiffs reallege and incorporate herein by reference each and every allegation

25  contained in the preceding paragraphs of this Complaint.

26      66.     Defendants YCSO and Lopez have an official policy, long-standing custom or

27  practice of seizing and removing guns from private citizens' possession without probable cause or

28  evidence of any crime and without any legal justification, in violation of the citizens' rights under

BARTH DALY LLP
ATTORNEYS AT LAW

{00040851}                              - 18 -

COMPLAINT                                              2:23-CV-_____

the Second Amendment of the United States Constitution.  Defendants YCSO and Lopez further

have adopted, approved, sanctioned, allowed and implemented an official custom and practice of

failing to investigate and discipline employees of YCSO who commit widespread illegal searches

of private property and illegal seizures of private citizens' guns in violation of their constitutional

rights.

67.    Defendants Lopez, Hallenbeck, Glaser, Middleman, Wirick, Machado, Goodrich,

Richter, Tolentino, Vega and Does 1-15 were employees of defendant YCSO at all times relevant

to these proceedings and acted in the manner alleged herein in furtherance and pursuant to the

official policy, long-standing custom or practice of performing illegal searches for weapons and

seizing private citizens' guns without legal justification.

68.    The previously alleged conduct of defendants, which was condoned and allowed

by defendants under the previously alleged custom and practices violated plaintiffs' constitutional

and civil rights.  The individual defendants acted in the manner alleged because of the illegal

customs and practices adopted, approved, sanctioned, allowed and implemented by defendants

YCSO and Lopez.

WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial on all issues so triable.

## **PRAYER**

WHEREFORE plaintiffs request entry of judgment in their favor and against defendants

as follows:

(1)    For compensatory damages in an amount to be determined at trial;

(2)    For punitive damages against individual defendants in an amount to be

proven at trial;

(3)    For reasonable costs of this suit and attorneys' fees; and

///

///

///

COMPLAINT                                                                2:23-CV-_____

1      (4)      For such further relief as the Court may deem proper, just and appropriate.

2    Dated:  August 22, 2023.              Respectfully submitted,

3                                          BARTH DALY LLP

4
                                           By____/s/ Kresta Nora Daly_____
5                                               KRESTA NORA DALY

6                                          Attorneys for Plaintiff CHRISTINE DeMARIA individually
                                           and in her capacity as Guardian Ad Litem for ANTHONY
7                                          DeMARIA

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                                2:23-CV-_____

BARTH DALY LLP
ATTORNEYS AT LAW

# EXHIBIT A

**RETURN TO SEARCH WARRANT NO. _23-112_**
**STATE OF CALIFORNIA - COUNTY OF YOLO**

Robert F Middleman being sworn states she conducted a search pursuant to the below
described search warrant:

F I L E D
YOLO SUPERIOR COURT

**Issuing Judge:** Daniel M. Wolk

APR 2 1 2023

**Date of Issuance:** 04/06/2023

BY_____

**Date of Service:** 04/06/2023

DEPUTY

**LOCATIONS/PROPERTY SEARCHED:**

-Location:               Guinda, CA. County of Yolo.

**SEARCH RESULTS:**

-Wanted subject Anthony DeMaria          was located. He was transported to
Woodland Memorial Hospital for a Mental Health Evaluation. He was not arrested by
the Yolo County Sheriff's Office. He was released to Hospital Staff.

-34 firearms and no less than 20,000 live rounds of various ammunition were collected
for safekeeping by the Sheriff's Office.

-One miscolenious revolver cylinder was collected for safekeeping.

-One green spiral notebook was collected as evidence.

R. MIDDLEMAN #170

**Affiant**

_____

Sworn to and subscribed before me on

April 14, 2023

_____

**(Judge of the Superior Court)**

DANIEL M. WOLK

Return to Search Warrant NO. __23-112__

State of California – County of Yolo

SW# _23-112_

**STATE OF CALIFORNIA - COUNTY OF YOLO**
**SEARCH WARRANT AND AFFIDAVIT**

F I L E D
YOLO SUPERIOR COURT

APR 2 1 2023

BY _____ B.___
DEPUTY



Detective Robert Middleman, swears under oath that the facts expressed by him in the attached and incorporated Statement of Probable Cause are true and that based thereon he has probable cause to believe and does believe that the property described below is lawfully seized pursuant to Penal Code Section 1524, as indicated below, and is now located at the locations set forth below. Wherefore, affiant requests that this Search Warrant be issued.

_Robert F. Middleman #170_

(Signature of Affiant)

**HOBBS SEALING REQUESTED:**  YES  X NO

**NIGHT SEARCH REQUESTED:**  YES  X NO

Reviewed electronically by: Deputy DA Deanna Hays

(SEARCH WARRANT)

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY PEACE OFFICER IN THE COUNTY OF YOLO:**
proof by affidavit having been made before me by Detective Robert Middleman that there is probable cause to believe that the property described herein may be found at the locations set forth herein and that it is lawfully seized pursuant to Penal Code Section 1524 as indicated by "X"(s) in that it:

___  Was stolen or embezzled.

___  Was used as the means of committing a felony.

_X_  Is possessed by a person with the intent to use it as means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery.

_X_  Tends to show that a felony has been committed or that a particular person has committed a felony.

___  Tends to show that sexual exploitation of a child, in violation of P.C. Section 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Section 311.11, has occurred or is occurring.

___  There is a warrant to arrest a person.

___  When a provider of electronic communication service or remote computing service has records or evidence, as specified in Section 1524.3, showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery.

1

**YOU ARE THEREFORE COMMANDED TO SEARCH:** A search of all attics, trailers, basements, rooms, garages, outbuildings, storage sheds, vehicles, garbage cans, containers, and land parcel located within the property boundaries of                    , Guinda, Yolo County.

The residence is a                    home                                                        . The property is approximately 188 acres containing barns and outbuildings throughout.
     The home is not visible from public land.

For the following subject:

-Anthony John DeMaria                California Driver License          Gray hair, green eyes, 6 foot 2 inches in height at 200 pounds.

To include any and all vehicles under the control of residents of                , Guinda, Yolo County at the time this warrant is served as evidenced by DMV registration information, possession of keys to the vehicle, actual use of the vehicle as determined through witness statements or admissions;

## FOR THE FOLLOWING ITEMS:

-Any records, information, and/or property tending to establish the identity of persons who have dominion and control of this residence and vehicle(s), or items to be seized, including delivered mail, bills, utility bills, telephone bills, miscellaneous addressed mail, personal letters, personal identification, purchase receipts, rent receipts, sales receipts, tax statements, payroll check stubs, keys and receipts for safe deposit box(s), keys and receipts for rental storage space, keys and receipts for post office box or mail drop rentals, ignition keys, car door and trunk keys, vehicle ownership certificates or "pink slips," and/or vehicle registration slips.

-Investigating officers are authorized, at their discretion, to seize all cell phones or "computer systems," "computer program or software," "computer network," and "supporting documentation" as defined by Penal Code section 502, subdivision (b), including any supporting hardware, software, or documentation that is necessary to the use the system or is necessary to recover digital evidence from the system and any associated peripherals that are believed to contain some or all of the evidence described in the warrant, and to conduct an offsite search of the seized items for the evidence described.

-All firearms and items deemed as deadly weapons present at the location during service of the warrant.

## ADDITIONAL ORDERS:

1. The investigating officers and those agents acting under their direction are authorized to seize all articles of personal property, images, documents, communications, records, materials, and information sought by the search warrant wherever they may be stored or found at the location to be searched and in any form that they may be stored or found.

2. Investigating officers or their designees responsible for the destruction of property seized in the lawful execution of this Search Warrant are authorized, without further order of the court to which the Return of Service is made, to dispose of said property as follows:

-Controlled substances, unlawful firearms, other deadly weapons, and other contraband or property may be destroyed or otherwise disposed of according to law after (60) days from the completion of any case connected with this Search Warrant. The investigating officers or their designees responsible for the destruction of property seized will be notified by the district attorney's office of the completion of any case connected with this Search Warrant and request authorization to proceed with the destruction or disposal of evidence.

-Any stolen or embezzled property found during the search may be returned to its known owner(s) after said items have been photographically documented.

3. DISPOSITION OF PROPERTY SEIZED: It is further ordered that upon the adjudication of the case(s) against all defendant(s) in this action, including the resolution of any and all appeals, and the written concurrence of the Yolo County District Attorney's Office, the property seized under the Search Warrant to be disposed of in accordance with the procedures set forth in California Penal Code 1407 to 1422, without the necessity of a further court order issued pursuant to California Penal Code 1536.

4. Pursuant to Penal Code 1546.1(d)(2) any information obtained through the execution of this warrant that is unrelated to the objective of this warrant shall be sealed and not subject to further review, use, or disclosure except pursuant to a court order or to comply with discovery as required by Sections 1054.1 and 1054.7.

This **Search Warrant** and **Affidavit** and attached and incorporated **Statement of Probable Cause** were sworn to as true and subscribed before me on _____ **at** _____ A.M. / P.M.  Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

Received signed affidavit electronically on April 6, 2023, around 8:00am

April 6, 2023

DANIEL M. WOLK

(Signature of Magistrate)

Judge of the Superior Court of California, County of Yolo, Dept. _____.

SEALING APPROVED: YES [ ]  NO [X]

NIGHT SEARCH APPROVED: YES [ ]  NO [X]

OATH WAS ADMINISTERED TO AFFIANT: YES [X]  NO [ ]

Executed by   R. MIDDLETON #170

Affiant

4/6/2023 @ 1315 HOURS

Date / Time SW#

3

FILED
YOLO SUPERIOR COURT

APR 0 7 2023

$\underline{SW\ 23-112}$

BY _____
DEPUTY

**AFFIDAVIT OF DETECTIVE ROBERT MIDDLEMAN IN SUPPORT OF SEARCH WARRANT**

### STATEMENT OF QUALIFICATIONS

Your Affiant, Robert Middleman, is currently assigned as a Detective with the Yolo County Sheriff's Office, and has been employed with the Yolo County Sheriff's Office since February 28, 2014. Your Affiant has investigated a variety of crimes during his career as a full-time peace officer including motor vehicle theft, burglary, possession of stolen property, forgery, fraudulent use of credit cards, conspiracy, narcotics violations, domestic violence, homicide, weapons violations, crimes against children, and sex assaults.

Your Affiant attended the Napa Valley Basic Recruit Academy, which was 956 hours of training. The training your Affiant received was in law enforcement matters including the investigation of crimes against persons and crimes against property. This instruction included how to search for, preserve, document, collect and enter items into evidence, which are related to these types of crimes.

During these investigations, your Affiant has searched for, located, preserved and collected evidence including items of contraband, weapons, narcotics, narcotics paraphernalia, stolen and embezzled property, indicia, and other property as it relates to these crimes. I have learned the ways in which these crimes are committed, what property is used as instrumentalities to these crimes and how such items are concealed or discarded.

Your Affiant has had the opportunity to speak with other experienced Police Officers and Investigators in an informal training setting in regards to the investigation of crimes. While employed as a Peace Officer, I have been part of, or directly participated in, hundreds of investigations regarding crimes against persons and property. I have interviewed many people in regards to these types of crimes, including, but not limited to, suspects, victims and witnesses.

Your Affiant has had the opportunity to speak with other experienced Investigators in an informal training setting in regards to the investigation of criminal investigation including property crimes such as burglary, possession of stolen property and grand theft. Your Affiant has spoken to and interviewed several subjects who have admitted to or have been arrested for those offenses. These subjects informed your Affiant about the methods used to complete their crimes, tools used to commit the crimes, locations where they would store the fruits of their crimes, and other ways to conceal evidence related to their crimes. These subjects have discussed how they appropriate the fruits of the crimes, to others in return for money and or drugs.

While working as a Peace Officer, your Affiant has had the opportunity to investigate several hundred crimes and incidents including physical and sexual assaults, domestic violence incidents, homicides, suicides, accidental injuries, elder abuse, child abuse, identity theft, fraud, deaths, burglaries, robberies, thefts, conspiracy, vandalism, and narcotics offenses.

Your Affiant has conducted hundreds of searches including, probation, parole, inventory, consent, warrant and probable cause searches.

Your Affiant knows that cellular phones are often used to communicate prior/during/and after the commission of illegal drug sales. Your Affiant knows based on his experience and speaking with other investigators that individuals can

4

use cellular phones via text/SMS messages, calls, Facebook messages, and various messaging applications to conduct communication in furtherance of conspiracies to commit crimes.

Based on my training and experience, I know that subjects who are involved in large scale stolen property rings will often have several places of storing stolen property including storage units, places of employment, associates and co-conspirator's residences'.

I know from training, experience, law enforcement bulletins, and conversations with more experienced investigators that criminal will often use digital devices, such as personal computers and cellular/hybrid communication devices, to facilitate their crimes. I know that such devices may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and/or (2) the objects may have been used to collect and store information about crimes.

I know from my experience that criminals will use digital devices to access the Internet and to post messages, images, video files, and/or other data on social networking sites advertising their involvement in their particular crimes. When such posts involve controlled substances, they often contain images of the trafficker or user, controlled substances, U.S. currency, and/or weapons. I know that such posts sometimes contain direct references to the controlled substances the trafficker has available for sale and the controlled substances the user is seeking.

I know from my experience that criminals using cellular devices will often use street names or nicknames to describe or communicate with other criminals in order to conceal identities and associations should law enforcement conduct a search of the cellular device.

I know from training and experience that cellular/hybrid communication devices often contain logs of calls made, received, and missed as well as text messages sent and received. I know that cellular/hybrid communication devices are capable of storing other data such as electronic phone book information, voice messages, image files, audio files, video files, ring tones, and GPS history.

5

## PROBABLE CAUSE:

Your Affiant, Robert Middleman, is a sworn Deputy Sheriff with the Yolo County Sheriff's Department. Your affiant is currently assigned as a Detective to the Investigations Division and was assigned to the below case. **Yolo County Sheriff's Office Case Number 23-0730.**

I declare that all facts and statements contained herein were obtained from the following: personal knowledge and/or observations, conversations with other law enforcement officers or witnesses, and the review of official reports/records.

On 04/04/2023 at approximately 1929 hours, Anthony John DeMaria                    contacted Yolo County Dispatch. Anthony identified himself verbally and was extremely agitated while speaking with the dispatcher. Anthony stated he was upset due to his wife Christina DeMaria, walking off the property with a Yolo County Sheriff's Deputy. Anthony demanded that the dispatcher reach the Deputy over the radio to advise him, "tell him Demaria is after his ass." Anthony stated that this will cost the department money and that there will be "hell to pay."

A short while later Anthony contacted Deputy Glaser via telephone. Deputy Glaser knows Anthony personally and has dealt with him numerous times throughout his career at the Sheriff's Office. Anthony informed Deputy Glaser that Deputy Mount took his wife Christina away and demanded that Deputy Mount return her or there would be consequences to pay. Anthony stated, there will be one less Deputy working for the Sheriff's Office and that he will sue. Anthony was agitated and very aggressive.

Anthony resides at                    , in the town of Guinda. I conducted a check of Anthony not locating any criminal convictions. The Automated Firearms System showed that over twelve firearms were registered to him. The firearms ranged from rifles, shotguns, and pistols, of various calibers.

Deputy Glaser informed me of an incident he recently learned about from an individual who worked on DeMaria's property. After installing irrigation lines, the worker discovered the irrigation lines were destroyed and had bullet holes in them. Christina apologized to the worker stating that Anthony was pissed off at the world and intentionally destroyed the lines. Christina further told the worker that Anthony had Dementia and suffered from memory issues. While fixing the lines, the worker heard yelling as well as items being broken in the DeMaria residence. Christina again approached the worker telling him that Anthony was having another anger episode.

I conducted a check of DeMaria through the YCSO electronic reporting system. I located a call from 01/03/2023 where dispatch received a call and observed a verbal altercation through an open landline. The landline originated from 6470 Hwy 16, Guinda. Heard on the line was a female and a male yelling, the male subject threatened to burn down the residence. Deputy Mount later met with Christina DeMaria who stated she was involved in a verbal argument with her husband Anthony. Christina stated that Anthony was suffering from Dementia.

On 09/08/2017 Yolo County Sheriff's Office took a report of an assault. Anthony was the suspect in the case where he was verbally abusive and attempted to physically strike another subject. During the investigation, it was determined that Anthony posed a threat to the community, and his firearms were taken for safekeeping. The firearms were since returned.

Anthony DeMaria owns numerous firearms and is possibly suffering from a mental health decline. Based on the call history and information gathered from his previous employee, Anthony shows signs of violent behavior and is known to make threats towards his wife Christina.

6

Based on the above information, Anthony DeMaria made a credible and willful threat to cause harm to Deputy Mount. Anthony stated there will be one less Deputy, implying he intended to kill Deputy Mount. Anthony committed 422(a) PC criminal threats.

I am requesting a warrant for Anthony's residence located at                                          Guinda, to apprehend Anthony DeMaria for 422(a) PC and recover all of the firearms in his possession.

### END OF PROBABLE CAUSE

**YOU ARE THEREFORE COMMANDED TO SEARCH:** A search of all attics, trailers, basements, rooms, garages, outbuildings, storage sheds, vehicles, garbage cans, containers, and land parcel located within the property boundaries of **Guinda, Yolo County.**

The residence is a                                                                                                      The property is approximately 188 acres containing barns and outbuildings throughout.
 The home is not visible from public land.

For the following subject:

-Anthony John DeMaria                     California Driver License                Gray hair, green eyes, 6 foot 2 inches in height at 200 pounds.

To include any and all vehicles under the control of residents of                     Guinda, Yolo County at the time this warrant is served as evidenced by DMV registration information, possession of keys to the vehicle, actual use of the vehicle as determined through witness statements or admissions;

## FOR THE FOLLOWING ITEMS:

-Any records, information, and/or property tending to establish the identity of persons who have dominion and control of this residence and vehicle(s), or items to be seized, including delivered mail, bills, utility bills, telephone bills, miscellaneous addressed mail, personal letters, personal identification, purchase receipts, rent receipts, sales receipts, tax statements, payroll check stubs, keys and receipts for safe deposit box(s), keys and receipts for rental storage space, keys and receipts for post office box or mail drop rentals, ignition keys, car door and trunk keys, vehicle ownership certificates or "pink slips," and/or vehicle registration slips.

-Investigating officers are authorized, at their discretion, to seize all cell phones or "computer systems," "computer program or software," "computer network," and "supporting documentation" as defined by Penal Code section 502, subdivision (b), including any supporting hardware, software, or documentation that is necessary to the use the system or is necessary to recover digital evidence from the system and any associated peripherals that are believed to contain some or all of the evidence described in the warrant, and to conduct an offsite search of the seized items for the evidence described.

-All firearms and items deemed as deadly weapons present at the location during service of the warrant.

## ADDITIONAL ORDERS:

7

1. The investigating officers and those agents acting under their direction are authorized to seize all articles of personal property, images, documents, communications, records, materials, and information sought by the search warrant wherever they may be stored or found at the location to be searched and in any form that they may be stored or found.

2. Investigating officers or their designees responsible for the destruction of property seized in the lawful execution of this Search Warrant are authorized, without further order of the court to which the Return of Service is made, to dispose of said property as follows:

   -Controlled substances, unlawful firearms, other deadly weapons, and other contraband or property may be destroyed or otherwise disposed of according to law after (60) days from the completion of any case connected with this Search Warrant. The investigating officers or their designees responsible for the destruction of property seized will be notified by the district attorney's office of the completion of any case connected with this Search Warrant and request authorization to proceed with the destruction or disposal of evidence.

   -Any stolen or embezzled property found during the search may be returned to its known owner(s) after said items have been photographically documented.

3. DISPOSITION OF PROPERTY SEIZED: It is further ordered that upon the adjudication of the case(s) against all defendant(s) in this action, including the resolution of any and all appeals, and the written concurrence of the Yolo County District Attorney's Office, the property seized under the Search Warrant to be disposed of in accordance with the procedures set forth in California Penal Code 1407 to 1422, without the necessity of a further court order issued pursuant to California Penal Code 1536.

4. Pursuant to Penal Code 1546.1(d)(2) any information obtained through the execution of this warrant that is unrelated to the objective of this warrant shall be sealed and not subject to further review, use, or disclosure except pursuant to a court order or to comply with discovery as required by Sections 1054.1 and 1054.7.

**I declare under penalty of perjury that the information contained in this affidavit is true and correct.**

*Robert F. Middleman #170*          04/05/23

Affiant                                           Date

8